# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **TONY A. MESSER, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:18CV00040 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **BRISTOL COMPRESSORS** | ) | By: James P. Jones |
| **INTERNATIONAL, LLC, ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Mary Lynn Tate, Tate Law PC, Abingdon, Virginia, for Plaintiffs; W. Bradford Stallard, Penn, Stuart & Eskridge, Abingdon, Virginia, and Alexander A. Ayar, McDonald Hopkins, Bloomfield Hills, Michigan, for Defendant Bristol Compressors International, LLC; Mark H. Churchill, Holland & Knight LLP, Tysons, Virginia, for Defendant Garrison Investment Group, L.P.*

In this action for violations of the Worker Adjustment and Retraining Notification Act, the plaintiffs, former employees of a closed manufacturing plant, have moved for class certification. The defendants have responded in opposition, arguing that the plaintiffs' proposed subclasses do not meet the requirements for certification. For the reasons that follow, I will grant the Motion for Class Certification.

I.

At least for the purposes of the present motion, the underlying basic facts are uncontested. Prior to July 31, 2018, defendant Bristol Compressors International, LLC ("Bristol Compressors") employed between 450 and 500 people at a hermetic compressor manufacturing facility in Bristol, Virginia. On July 31, Bristol Compressors sent letters to all employees, informing them that the company would permanently close on or around August 31, 2018, and that layoffs would begin immediately and continue through August.[1] The first wave of terminations took place between July 31 and August 2, 2018. Between 50 and 110 employees were terminated during this first wave of terminations.

Thereafter, additional details about the factory closing were provided to the remaining employees in a memorandum posted in the factory and titled "Questions and Answers about Bristol Facility Closing." The memorandum informed them that their last day of employment would be on or before September 30, 2018. It also stated that Bristol Compressors had terminated some employee benefits, including severance pay.

---

[1] The plaintiffs allege that prior to July 31, 2018, defendant Garrison Investment Group, LP ("Garrison") acquired an interest in Bristol Compressors and participated in or directed the factory's operations as it closed, including employee terminations. Bristol Compressors and Garrison deny any liability under the "single employer" theory asserted by the plaintiffs.

Bristol Compressors also sent a memorandum to employees offering them a $1,000 bonus for working throughout the company's wind-down process. Terminations continued throughout September and November, and the facility closed on or about November 16, 2018. To receive the bonus for working through the wind-down process, employees were required to execute a Stay Bonus Letter Agreement ("SBLA"), which released all claims related to their employment, including an express waiver of all Worker Adjustment and Retraining Notification Act ("WARN Act") claims and the right to join the present lawsuit.

Tony A. Messer and the other named plaintiffs filed a Complaint on behalf of themselves and other similarly situated individuals for violations of the WARN Act, claiming that the defendants violated the Act's requirement that they provide employees 60 days' written notice prior to a plant closing. Thereafter, the plaintiffs filed a Motion for Class Certification, which the defendants opposed. The motion has been fully briefed and orally argued and is ripe for decision.

II.

The Federal Rules of Civil Procedure require a party seeking class certification to demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

>    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
>    (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These are referred to as the numerosity, commonality, typicality, and adequacy of representation requirements. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014).

"In addition, the class action must fall within one of the three categories enumerated in Rule 23(b)." *Id.*[2] Here, the plaintiffs seek certification under Rule 23(b)(3), which authorizes class treatment when all of the prerequisites of 23(a) are satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Lastly, Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable by reference to objective criteria. *EQT Prod. Co.*, 764 F.3d at 358. "If class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *Id.* "A party seeking class certification must do more than plead

---

[2] I have omitted internal quotation marks, citations, and alterations throughout this opinion unless otherwise noted.

compliance with the aforementioned Rule 23 requirements. . . . Rather, the party must present evidence that the putative class complies with Rule 23." *Id.* at 357.

Here, the plaintiffs have proposed two subclasses. Subclass One, the "Initial Terminations," would consist of

> all those who worked at the Bristol Plant full time and who were terminated without cause on their part between July 31, 2018 and August 31, 2018, as part of, or as the reasonably foreseeable consequences of the plant closing ordered on July 31, 2018, who did not file a timely request to opt out of the class.

Pls.' Mot. Class Certification 3, ECF No. 24. Subclass Two, the "Extended Terminations," would consist of

> all those who worked full time at the Bristol Plant and who were terminated without cause on their part after August 31, 208, as part of, or as the reasonably foreseeable consequences of the plant closing ordered by Defendants on July 31, 2018, who do not file a timely request to opt out of the class.

*Id.* I will address each of these subclasses in turn.

A.

With respect to Subclass One, the defendants object to certification on the sole ground that the subclass fails to satisfy Rule 23(a)'s numerosity requirement. However, in ruling on the Motion for Class Certification, I find it appropriate to consider all of Rule 23's requirements.

To satisfy Rule 23(a)'s numerosity requirement, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

No specified number is needed to maintain a class action; rather, the rule should be considered in light of the particular circumstances of the case. *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). It has been held that a class of 74 members is "well within the range appropriate for class certification." Indeed, a class of as few as 18 members has been approved. *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). "Joinder of all members of the class need only be impracticable, not impossible." *United Bhd. of Carpenters & Joiners of Am., Local 899*, 152 F.R.D. 518, 522 (S.D.W. Va. 1994). In determining whether the class is sufficiently numerous, the court may consider the estimated size of the class, the geographic diversity of the class, the difficulty of identifying class members, and the negative impact on judicial economy if individual suits were required. *Id.*

Here, the defendants allege that proposed Subclass One contains 47 members, 11 of whom are already named plaintiffs, and 16 of whom have retained plaintiffs' counsel in relation to this case. The plaintiffs contend that the numerosity requirement is satisfied in light of the estimated size of the class and the efficiency of adjudicating their claims in a single case. However, the defendants argue that a class of 47 members, over half of whom have already individually engaged plaintiffs' counsel, is not so numerous that joinder of all members is impractical. Instead, they argue that joinder of the remaining 20

unrepresented members would be manageable, and in support, they contend that plaintiffs' counsel has already contacted these individuals. The defendants also argue that the subclass does not meet the numerosity requirement because its potential members are likely easily identifiable and not geographically dispersed.

I find that in light of the circumstances in this case, Subclass One satisfies the numerosity requirement. Although the subclass members are likely to be easily identifiable using Bristol Compressors' employment records, and many are likely still located in and around Bristol, Virginia, the remaining factors weigh in favor of class certification. At oral argument, plaintiffs' counsel represented to the court that, contrary to the defendants' assertion, she has not contacted any of the 20 unrepresented class members regarding joining the present litigation. Joinder of 20 additional individuals is impractical in light of the quantity alone and in light of the potential costs to these individuals of joinder given the relatively small remedy available to them under the WARN Act — up to 60 days of back pay and benefits. *See* 29 U.S.C. § 2104(a)(1). In addition, it will be significantly more practical and efficient to adjudicate the issues applicable to Subclass One as a class action rather than as a case with up to 47 individual plaintiffs or as multiple cases.

The second requirement under Rule 23(a), commonality, requires a showing that the class members have suffered the same injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). Their claims must depend on a "common

contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. A single common question will satisfy the commonality requirement. *Id.* at 359.

The plaintiffs contend that there are multiple issues common to the members of Subclass One, including whether the defendants gave them 60 days' notice of the factory closing, whether sufficient facts exist to support the defendants' "faltering company" and "unexpected business circumstances" defenses, whether the defendants' written severance pay scheme constituted an employee benefit plan under the WARN Act, and if so, whether the posted memorandum and email was sufficient notice of cancellation of the benefits. The defendants do not raise any challenges to Subclass One's satisfaction of the commonality requirement. I find that Subclass One satisfied this requirement, as the resolution of each of these issues is central to the validity of all of the subclass members' WARN Act violation claims.

As to the third Rule 23(a) requirement, typicality, the class representative must be a member of the class and "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). This requirement serves as a guidepost for whether "the named plaintiff's

claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 157 n.13.

The named plaintiffs in this case satisfy the typicality requirement. The defendants agree that 11 of the named plaintiffs are members of Subclass One. In addition, all of these named plaintiffs and the remaining members of Subclass One received the same allegedly deficient notice of the factory's closing, and they are all subject to the same defenses by the defendants. Thus, the named plaintiffs have suffered the same alleged injury as the members of Subclass One, and their claims will fairly and adequately protect the interests of the subclass members.

The final requirement under Rule 23(a), adequacy of representation, involves two issues: "(i) whether plaintiffs have any interest antagonistic to the rest of the class, and (ii) whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation." *Thomas v. La.-Pac. Corp.*, 246 F.R.D. 505, 509 (D.S.C. 2007).

Here, the named plaintiffs do not appear to have any interests antagonistic to the rest of the subclass. Moreover, plaintiffs' counsel is experienced and qualified — she has experience litigating WARN Act violation claims and class actions, and she is well regarded in the legal community. Further, no conflicts of interest appear to exist for plaintiffs' counsel. For the foregoing reasons, I find that proposed Subclass One satisfies the requirements of Rule 23(a).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3)'s predominance requirement is far more demanding than Rule 23(a)'s commonality requirement . . . ." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004). "Whereas commonality requires little more than the presence of common questions of law and fact, . . . Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate . . . ." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006).

With respect to Subclass One, plaintiffs identify individualized inquiries into damages as the only question that would affect individual subclass members. However, they argue that these individualized inquiries will be limited and that the numerous common questions of law and fact will predominate. The defendants counter that because the plaintiffs had different rates of pay; worked different hours; were terminated on different days; claimed different amounts of severance, vacation, and holiday pay; and may have found new employment during the period of the alleged violation, individualized damages questions will predominate, and it will not be efficient to adjudicate the matter as a class action.

Where questions of individual damage calculations overwhelm questions common to the class, certification is improper. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34–38 (2013) (finding class certification improper where the proposed damages model did not measure damages resulting from the particular antitrust injury on which liability was premised and did not establish that damages were capable of measurement on a classwide basis). However, "in cases where the fact of injury and damage breaks down in what may be characterized as virtually a mechanical task, capable of mathematical or formula calculation, the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability." *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977).

I find that individualized damage calculations do not prevent certification of Subclass One. Although the defendants are correct that calculating damages for each subclass member will require reference to facts specific to each individual, it is still the case that a mathematical formula will allow for the calculation of damages on a classwide basis. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (holding that the district court erred in denying class certification in an action for violation of the WARN Act where, among other things, "the damages for individual class members will entail a straightforward calculation of which days and how many hours they

would have worked, and how much they would have earned in tips"). Like in *Las Vegas Sands*, the formula here will likely entail a relatively straightforward calculation of which days and how many hours class members would have worked, their rate of pay, and their unused vacation time. The defendants' employee records will likely provide all of this information for each class member. Only any reductions in damages for earnings from new employment during the violation period would require individualized inquires. However, given the number of common issues in Subclass One, I find that these issues predominate over this individualized question.

As to the second component of Rule 23(b)(3) — whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy — the Rule sets out factors relevant to this consideration. These factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, a class action is superior to other methods of adjudicating the controversy. Given the relatively small and uniform amount of potential damages available to each plaintiff under the WARN Act, the interests of some class members in controlling the prosecution are not likely to outweigh the interests of others. In addition, this case is currently the only litigation by potential class members for violations of the WARN Act, and this forum is desirable given that the controversy arises out of federal law and conduct occurring in the forum state. Lastly, the class action will be manageable in light of the geographic location and relative ease of identifying the class members, the numerous common issues, and the limited individualized issues, as discussed above.

Accordingly, I will grant the Motion for Class Certification with respect to Subclass One, and I turn to Subclass Two.

B.

The defendants object to certification of Subclass Two, consisting of employees who were terminated after August 31, 2018, because they contend that it does not satisfy Rule 23(b)(3). I will address this argument first, as it may make consideration of Rule 23(a) unnecessary.

The defendants argue that Subclass Two fails to satisfy Rule 23(b)(3) because individualized questions of law or fact predominate over questions common to the subclass. They contend that individualized questions predominate

because 249 of the approximately 307 members of the subclass signed the SBLA, and plaintiffs' briefing suggests that they intend to argue that they signed the agreement because they were enticed, as well as that the defendants knew they were "in financial and emotional distress and had no choice but to execute the newly demanded waiver." Pls.' Mem. in Supp. Mot. Class Certification 10, ECF No. 25-1. In other words, the defendants argue that for 249 of the subclass members, the defendants' liability depends on the validity of the SBLA waivers, which the plaintiffs intend to attack on grounds that turn on the unique mental and financial states of each individual member.[3]

However, at oral argument, plaintiffs' counsel assured the court that the overarching issue arising from the SBLA will be its legal unconscionability, based on facts common to all class members. In particular, the plaintiffs intend to argue that the defendants' memorandum promising employees a $1,000 bonus for working through the company's wind-down process induced employees to continue working at the factory, and it was unconscionable to later require them to

---

[3] The defendants also argue that individualized questions will arise with respect to their alleged failure to provide members of Subclass Two with 60 days' notice of the factory's closing because members of the subclass were terminated on different dates throughout September and November 2018 and were thus subject to different closure notices and updates. However, at oral argument, the defendants acknowledged that none of the notices or updates gave 60 days' notice of the factory's closing. Thus, individualized questions will not be necessary with respect to this issue. The defendants also allege that similar to Subclass One, individualized inquiries into damages will be necessary for Subclass Two. However, I find that these questions do not overwhelm the issues common to Subclass Two for the same reasons discussed with respect to Subclass One.

sign an agreement waiving valuable rights to get the bonus they were already promised. The plaintiffs argue that because this attack on the validity of the agreement applies in equal force for all class members who signed it, it will not give rise to individualized questions.

The plaintiffs also point to a number of other issues common to the subclass to show that common issues will predominate. They state that the issues common to Subclass One will also apply to the claims of members of Subclass Two. In addition, issues common only to Subclass Two include whether the employees not terminated initially were entitled to 60 days' notice of the factory's closing, whether the defendants' notices of factory closing dates after July 31, 2018, satisfied the WARN Act's notice requirement, and whether the defendants' "faltering company" and "unexpected business circumstances" defenses excuse their alleged failure to comply with the requirement.

Relying on plaintiffs' counsel's assurances that the validity of the SBLA will center on the claim of unconscionability described above, I find that adjudicating this issue will not create individualized questions that will predominate over common ones. However, I also find that it is appropriate to divide proposed Subclass Two into two separate subclasses. *See* Fed. R. Civ. P. 23(c)(5). After this division, Subclass Two will consist of employees who were terminated after August 31, 2018, and who signed the SBLA. Subclass Three will consist of

employees who were terminated after August 31, 2018, and who did not sign the SBLA.

Applying the defendants' arguments regarding the requirements of Rule 23(b)(3) to the new Subclass Two, I find that the subclass satisfies the rule. Plaintiffs' counsel has assured the court that the validity of the agreement will turn on facts common to all those who signed it rather than on individualized inquiries into their mental and financial states. In addition, should this issue be resolved in favor of the subclass members, the numerous common issues identified by plaintiffs above will apply to the new Subclass Two. These common issues will also apply to Subclass Three, and it does not currently appear that individualized questions will arise with respect to Subclass Three. Thus, I find that questions common to Subclasses Two and Three predominate over any individualized issues. I also find that a class action is superior to other methods of adjudicating these issues for the same reasons stated with respect to Subclass One. Having determined that the newly created Subclasses Two and Three satisfy Rule 23(b)(3), I will consider the requirements of Rule 23(a).

As to numerosity, the defendants estimate that the new Subclass Two will contain approximately 249 individuals. Subclass Three will contain approximately 58 members. I find that each subclass is sufficiently numerous. Because the members of Subclasses Two and Three do not differ from those of Subclass One

with respect to the factors relevant to numerosity, joinder of these individuals is impractical for the same reasons stated with respect to Subclass One.

As to commonality, the plaintiffs identify a number of issues, stated above, that are common to the members of Subclass Two and will also be common to Subclass Three. Because the resolution of each of these issues is central to the validity of all of the subclass members' claims, Subclasses Two and Three satisfy the commonality requirement.

With respect to typicality, the defendants estimate that three of the named plaintiffs are members of the new Subclass Two — that is, they were terminated after August 31, 2018, and they signed the SBLA. These plaintiffs and the remaining members of Subclass Two all received notices that allegedly failed to satisfy the WARN Act's requirements, and they all may be subject to the defendants' "faltering company," "unexpected business circumstances," and SBLA defenses. With respect to Subclass Three, the defendants estimate that 34 named plaintiffs are members of the subclass. These plaintiffs and the remaining members of Subclass Three all received notices that allegedly failed to satisfy the WARN Act's requirements, and they all may be subject to the same "faltering company" and "unexpected business circumstances" defenses. Thus, the named plaintiffs' claims will fairly and adequately protect the interests of the members of Subclasses Two and Three.

Lastly, as to adequacy of representation, this requirement is satisfied for the same reasons stated with respect to Subclass One.

Having determined that the newly created Subclasses Two and Three satisfy the requirements of Rule 23(a) and 23(b)(3), I will grant the Motion for Class Certification with respect to these subclasses.

III.

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion for Class Certification, ECF No. 24, is GRANTED and this action is hereby certified as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;

2. The subclasses certified are defined as follows:

Subclass One:

All those persons employed at Bristol Compressors International, LLC's Bristol, Virginia, manufacturing facility full time and who were terminated without cause on their part between July 31, 2018, and August 31, 2018, as part of, or as the reasonably foreseeable consequences of the plant closing ordered on July 31, 2018, who do not file a timely request to opt out of the class.

Subclass Two:

All those persons employed at Bristol Compressors International, LLC's Bristol, Virginia, manufacturing facility full time and who were terminated without cause on their part after August 31, 2018, as part of, or as the reasonably foreseeable consequences of the plant closing ordered by Defendants on July 31, 2018, who signed a Stay Bonus Letter

Agreement, and who do not file a timely request to opt out of the class.

Subclass Three:

All those persons employed at Bristol Compressors International, LLC's Bristol, Virginia, manufacturing facility full time and who were terminated without cause on their part after August 31, 2018, as part of, or as the reasonably foreseeable consequences of the plant closing ordered by Defendants on July 31, 2018, who did not sign a Stay Bonus Letter Agreement, and who do not file a timely request to opt out of the class.

3. The court finding that for administrative efficiency purposes a limited number of class representatives is needed for each subclass, the plaintiffs must designate one class representative for each subclass, and class counsel must advise the court within 14 days of such selections and the qualifications as class representative of each such person selected, for approval and designation by the court;

4. Mary Lynn Tate of Tate Law PC is appointed as class counsel for all subclasses; and

5. Class counsel must submit to the court for its approval within 14 days a proposed written Notice to the class members and a Plan for achieving the best notice practicable under the circumstances to the class members, which Plan must include individual notice to all class members who can be identified through

reasonable effort.  The defendants may file a response to the proposed Notice and Plan, provided it is filed within 7 days thereafter.

>    ENTER:   June 20, 2019
>
>    /s/  *James P. Jones*
>    United States District Judge