## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **TONY A. MESSER, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:18CV00040 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **BRISTOL COMPRESSORS** | ) | JUDGE JAMES P. JONES |
| **INTERNATIONAL, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

*Mary Lynn Tate, TATE LAW PC, Abingdon, Virginia, for Plaintiffs.*

In this class action alleging violations of the Worker Adjustment and Retraining Notification ("WARN") Act, following my resolution of several motions for summary judgment, counsel for the defendant withdrew from representation at the defendant's request. The defendant was given the opportunity to find substitute counsel but did not do so.[1] On July 19, 2021, the court held a bench trial to determine liability and the amount of damages. No representative of the defendant appeared at the trial.

After hearing evidence, I directed class counsel to file a memorandum addressing (1) whether class members are entitled to an award of prejudgment interest, and (2) whether damages should be calculated based on a full 60 days of

---

[1] Class counsel has advised the court that the defendant entity no longer exists.

daily wages or whether deductions should be made for days on which the employees would not have been scheduled to work (*i.e.*, weekends).  The plaintiffs have submitted their memorandum, and the issues are ripe for decision.

## I.

The facts of this case are set forth in my earlier summary judgment opinion. *Messer v. Bristol Compressors Int'l, LLC*, No. 1:18CV00040, 2020 WL 1472217 (W.D. Va. Mar. 26, 2020).  Because the defendant failed to present any defense at trial, I find that the defendant violated the WARN Act and that 128 class members are owed damages as provided in 29 U.S.C. § 2104(a)(1)–(2).  In addition, the members of Subclass 3 are each owed stay bonuses in the amount of $1,000.  The plaintiffs presented the testimony of Thomas M. Hicok, CPA, who calculated the amount owed to each individual class member.

### A.  *Prejudgment Interest.*

The plaintiffs contend they are entitled to prejudgment interest on the amounts owed.  Hicok included in his calculations simple interest at a rate of six percent.  He testified that he believed this to be the Virginia statutory interest rate.  *See* Va. Code Ann. § 6.2-302.  Plaintiffs acknowledge in their memorandum that this was not the then-current federal interest rate.[2]

---

[2]  Post-judgment interest in federal cases is calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the

"Federal law controls the issuance of prejudgment interest awarded on federal claims." *Fox v. Fox*, 167 F.3d 880, 884 (4th Cir. 1999). "The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995). Class members are "entitled to an award of prejudgment interest because of the general rule that interest follows principal." *Mary Helen Coal Corp. v. Hudson*, 235 F.3d 207, 208 (4th Cir. 2000). Because the WARN Act does not provide a statutory prejudgment interest rate, the determination of the appropriate rate is left to the court's discretion. *See Fox*, 167 F.3d at 884 (Employee Retirement Income Security Act case).

I will award prejudgment interest at the federal statutory rate in effect on the date this Opinion and Order is issued. I will direct class counsel to use that interest rate in calculating the amounts that will be listed in the proposed judgment submitted to the court, as ordered below.

### B. Calendar or Work Days.

The WARN Act provides that an employer is liable for

> (A) back pay for each day of violation at a rate of compensation not less than the higher of —

---

judgment." 28 U.S.C. § 1961(a). This amount is calculated daily and compounded annually. 28 U.S.C. § 1961(b).

(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or

(ii) the final regular rate received by such employee; and

(B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.

Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

29 U.S.C. § 2104(a)(1).  The plaintiffs have requested compensation for each calendar day of the violation period.  They acknowledge, however, that courts are in disagreement on this point, with a majority holding that former employees are entitled to compensation only for the days they would have worked during the violation period had they remained employed.

The court in *Frymire v. Ampex Corp.*, 61 F.3d 757 (10th Cir. 1995) examined the statutory language and circuit split.  It noted that both the statute itself and the legislative history are ambiguous.  *Id.* at 772.  One interpretation is that employees should receive their "daily salary times sixty," while another "requires the court to determine the number of days worked *within* the sixty-day violation period and multiply that number by the daily salary."  *Id.* at 771.  "[A] person who worked five days a week over a sixty-day period would have worked approximately forty-four 'work days'. . . ."  *Id.*  The *Frymire* court found that both interpretations are "equally

-4

plausible." *Id.*  It concluded, however, that the latter "work days" interpretation better reflected the statutory purpose of compensating employees as though they had been given the requisite 60 days' notice.  *Id.* at 772 (favorably citing *Carpenters Dist. Council v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1282–1286 (5th Cir. 1994)).

In doing so, the *Frymire* court rejected the view of the Third Circuit in *United Steelworkers of Am. v. North Star Steel Co.*, 5 F.3d 39, 41–43 (3d Cir. 1993).  The *United Steelworkers* court reasoned that "[i]f 'back pay' [as used in § 2104(a)(1)(A)] meant lost earnings, Section 2104(a)(2) would be superfluous because a lost earnings calculation would automatically exclude the reductions it sets forth." *Id.* at 42.  That subsection allows a reduction for "any wages paid by the employer to the employee for the period of the violation."   29 U.S.C. § 2104(a)(2)(a).   The court further reasoned that if "back pay" meant lost earnings, "the employer would be entitled to reduce its liability by any earnings that the employees received during the period of the violation, even if those earnings were received from a different employer." *United Steelworkers*, 5 F.3d at 43.  In the court's estimation, this would conflict with § 2104(a)(2)(A), which only entitles an employer to reduce the damages owed by amounts that *it* paid.  *Id.*  Thus, the court held that the rules of statutory construction required it to interpret § 2104(a)(1) to mean that an employer owes its employees

pay for each calendar day of violation. *Id.* It concluded "that WARN uses the term 'back pay' simply as a label to describe the daily rate of damages payable." *Id.*

The Fourth Circuit has not yet addressed this issue, and in the 26 years since the *Frymire* decision, Congress has not acted to resolve the circuit split. The Third Circuit in *United Steelworkers* was the first court of appeals to consider the issue, and other courts of appeal that have since taken it up have, like *Frymire*, gone in the other direction, finding that workers must be paid only for the days they would have worked within the 60-day period. *See, e.g.*, *Burns v. Stone Forest Indus., Inc.*, 147 F.3d 1182, 1183–83 (9th Cir. 1998); *Breedlove v. Earthgrains Baking Cos.,* 140 F.3d 797, 801 (8th Cir. 1998); *Saxion v. Titan-C Mfg., Inc.*, 86 F.3d 553, 555 (6th Cir. 1996).

The WARN Act is intended to provide

> protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.

20 C.F.R. § 639.1(a). While the statutory language of § 2104(a)(1) is ambiguous, I find that paying workers for the number of days they would have worked during the

60-day violation period best achieves these purposes.[3]  I adopt the straightforward reasoning of the Ninth Circuit in *Burns*, which found that it makes "perfect sense" to require the employer to pay for 60 work days because the employee's "stream of income continues to flow for 60 days after he knows the plant will shut down, so he has two months to look for a new job." *Burns*, 147 F.3d at 1184.

## II.

For the foregoing reasons, it is **ORDERED** that class counsel shall, within 14 days, submit to the court in Word format a proposed judgment that lists the amount due to each of the 128 eligible employees in Subclasses One and Three, calculated in accordance with the rulings in this Opinion and Order, to include prejudgment interest at the now-current federal rate and compensation only for the days the class members would have worked during the violation period had they remained employed.

ENTER:   October 8, 2021

/s/  JAMES P. JONES
Senior United States District Judge

---

[3] Although its path was different, the Third Circuit ultimately reached a similar result in *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 151 (3d Cir. 1998), when it held that "the regular daily rate of a salaried employee is the employee's annual salary divided by the number of days in a year," rather than dividing the salary only by the days the employee would have worked in order to reach the daily rate.  Thus, even under current Third Circuit law, the WARN Act does not provide a windfall to employees; instead, it awards salaried employees only what they would have been paid had they remained employed during the 60-day notice period.